IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 18-cv-02378-CMA-STV

WARREN WEXLER,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

---

**ORDER ADOPTING THE RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE SCOTT T. VARHOLAK**

---

This matter is before the Court on review of the Recommendation by United States Magistrate Judge Scott T. Varholak (Doc. # 27), wherein he recommends that this Court grant Defendant United States' Motion to Dismiss (Doc. # 10). On May 24, 2019, Plaintiff Warren Wexler filed his Objection to the Recommendation (Doc. # 30). On June 7, 2019, Defendant files its Response to the Objection (Doc. # 32). In addition to filing his Reply to the Response on June 10, 2019 (Doc. # 33), Plaintiff filed several supplements[1] to his Objection (Doc. ## 31, 36, 38, 40–43). For the following reasons, Plaintiff's objections are overruled, and the Court adopts the Recommendation.

---

[1] While Plaintiff labeled these filings as "motions" (Doc. ## 31, 36, 38), the contents therein reflect corrections, modifications, or arguments related to his Objection to the Recommendation. The Defendant responded to these filings on July 18, 2019. (Doc. # 44.) Plaintiff responded to this response on July 24, 2019. (Doc. # 45.)

# I. BACKGROUND

## A. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Magistrate Judge Varholak provided a thorough recitation of the factual and procedural background in this case. The Recommendation is incorporated herein by reference, *see* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b), and the facts will be repeated only to the extent necessary to address Plaintiff's Objection.

The Federal Employees' Compensation Act ("FECA") "defines the United States' exclusive liability for claims by federal employees for work-related injuries." *Wideman v. Watson*, 617 F. App'x 891, 894 (10th Cir. 2015) (citing 5 U.S.C. §§ 8102(a), 8116(c)); *Farley v. United States*, 162 F.3d 613, 615 (10th Cir. 1998)). It provides that "the United States will pay compensation for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty . . . ." 5 U.S.C. § 8102(a), 20 C.F.R. § 10.1. The Secretary of Labor may also prescribe rules and regulations necessary for the administration and enforcement of the Act. 5 U.S.C. § 8149. The authority provided by 5 U.S.C. §§ 8145 and 8149 has been delegated by the Secretary to the Director of the Office of Worker's Compensation ("OWCP"). 20 C.F.R. § 10.2. The OWCP's discretion in determining how to administer FECA has been described as "virtually limitless." *See Markham v. United States*, 434 F.3d 1185, 1188 (9th Cir. 2006).

A subdivision of OWCP, the Division of Federal Employees' Compensation ("DFEC"), drafted the FECA Procedure Manual ("FECA Manual") to "govern[] claims under [] FECA and address[] its relationship to the program's other written directives." FECA PM 0-100(3), 0-0200(1). The FECA Manual "establishes policies, guidelines and

2

procedures for determining whether an injured employee is eligible for compensation." *Woodruff v. U.S. Dep't of Labor*, 954 F.2d 634, 641 (11th Cir. 1992). Pertinent to the instant action, the FECA Manual also governs the parameters for when a FECA claim examiner may direct or schedule a second opinion examination of an injured employee. FECA PM 3-0500, 2-810(9).

Plaintiff applied for FECA benefits in 1991, and upon the OWCP's approval of his application, OWCP began paying Plaintiff wage-loss benefits for his total disability. (Doc. # 10 at 4.) In July 2015, pursuant to 5 U.S.C. § 8123(a),[2] the Denver District Office ("DDO") of the OWCP sent Plaintiff a letter providing that a second opinion examination of him was scheduled for August 17, 2015. (Doc. # 1-2 at 1; Doc. # 10-1 at 3, ¶ 16, ) According to the DDO, a second opinion examination was necessary "to ensure prompt handling of" Plaintiff's claim because the most recent medical report from Plaintiff's attending physician ("AP") was more than three years old and a current medical report is due every three years. (Doc. # 10-1 at 58; Doc. # 1-2 at 1, 17.)

After Plaintiff received the DDO letter, he sent approximately twelve letters to the DDO and one to the Department of Labor ("DOL"), within which he requested both entities to cancel the second opinion examination and threatened to sue the entities for intentional infliction of emotional distress ("IIED") if cancellation did not occur. (*Id.* at 1–2, 7, 12–14.) The DDO declined to cancel the second opinion examination. (*Id.* at 2.)

---

"An employee shall submit to examination by a medical officer of the United States, or by a physician designated or approved by the Secretary of Labor, after the injury and as frequently and at the times and places as may be reasonably required." 5 U.S.C. § 8123(a).

Both parties represent that Plaintiff attended the second opinion examination on August 17, 2015. (Doc. # 10 at 5; Doc. # 1-2 at 21.)

On September 17, 2018, Plaintiff filed suit against Defendant and asserted an IIED claim arising out of the OWCP's decision to schedule Plaintiff for a second opinion examination. (Doc. # 1, Doc. # 1-2 at 12–15, 21–22). Defendant moved to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). (Doc. # 10.) Plaintiff responded to the Motion to Dismiss on December 31, 2018 (Doc. # 18), and he supplemented his response on July 29, 2019 (Doc. # 49). Defendant filed its Reply to the Response on February 25, 2019. (Doc. # 24.)

### B. THE MAGISTRATE JUDGE'S RECOMMENDATION

Magistrate Judge Varholak issued his Recommendation that the Court should dismiss Plaintiff's Complaint for lack of subject matter jurisdiction on April 24, 2019.[3] (Doc. # 27.) The Magistrate Judge determined that sovereign immunity barred Plaintiff's claims because such claims arose from a government employee's performance of discretionary acts. (*Id.* at 12.) While the Federal Torts Claim Act ("FTCA") provides that the United States has waived its sovereign immunity over certain tort claims, the Magistrate Judge correctly observed that there are exceptions to this waiver, including one for the performance or failure to perform discretionary acts. (*Id.* at 5–6).

---

[3] The Magistrate Judge declined to address Defendant's other arguments pertaining to the statute of limitations and failure to state a claim under Rule 12(b)(6). (Doc. #27 at 5.) Because the Court agrees with the Recommendation, the Court too declines to consider the other grounds upon which Defendant requests to dismiss Plaintiff's Complaint.

To determine whether this exception insulated Defendant from liability, the Magistrate Judge conducted the two-step inquiry from *Berkovitz v. United States*, 486 U.S. 531 (1988). He concluded that, first, Defendant's act of scheduling a second opinion examination of Plaintiff was a discretionary act (*Id.* at 7–11), and second, that Defendant's discretionary act served public policies. (*Id.* at 12.) Because both *Berkovitz* steps were satisfied, the Magistrate Judge recommends dismissal of Plaintiff's claims without prejudice. (*Id.*)

On May 24, 2019, Plaintiff filed his objections to the Recommendation. (Doc. # 30.) Plaintiff contends that Magistrate Judge Varholak erred in determining that Defendant's act of directing the second opinion examination was discretionary. (*Id.* at 2.) Plaintiff argues that when Defendant ordered the second opinion examination, it violated mandatory regulations set forth in the FECA Manual. (Doc. # 30 at 1–8.) As such, Plaintiff asserts that the discretionary function exception does not apply (*Id.* at 10, 15–17), which dictates the conclusion that the Defendant has waived sovereign immunity under the FTCA. For the following reasons, the Court adopts the Recommendation and overrules Plaintiff's objections.

## II. LEGAL STANDARDS

### A. REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Rule 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." An objection is properly made if it is both timely and specific. *United States v. One Parcel of Real*

5

*Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996). In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

**B.     *PRO SE* PLAINTIFF**

Plaintiff is proceeding *pro se*. The Court, therefore, reviews his pleading "liberally and hold[s] [it] to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint").

**C.     RULE 12(B)(1)**

Rule 12(b)(1) concerns whether a court has jurisdiction to properly hear the case before it. "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citing *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994)). Courts strictly construe statutes conferring subject matter jurisdiction on federal courts and

resolve doubts against federal jurisdiction. *F & S Constr. Co. v. Jensen*, 337 F.3d 160, 161–62 (10th Cir. 1964). The party asserting subject matter jurisdiction has the burden to establish jurisdiction. *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

Rule 12(b)(1) challenges may take two forms: a facial attack on the sufficiency of the plaintiff's allegations as to subject matter jurisdiction or a factual attack on the facts upon which subject matter jurisdiction is based. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (citing *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995)). In the instant action, Defendant raises a factual attack. (Doc. # 10 at 8.); *Holt*, 46 F.3d at 1003 (concluding that factual issue as to whether a statute conferring immunity was implicated gave rise to factual attack on subject-matter jurisdiction). Defendant may, therefore, go beyond allegations contained in Plaintiff's Complaint. *Holt*, 46 F.3d at 1003. The Court "may not presume the truthfulness of the complaint's factual allegations" and "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.* (citing *Wheeler v. Hurdman*, 835 F.2d 257, 259 n.5 (10th Cir 1987)). In these circumstances, the Court's reference to evidence outside the Complaint does not convert the motion to a Rule 56 motion for summary judgment. *Id.*

**D.     FTCA AND SOVEREIGN IMMUNITY**

"[S]overeign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1984). As such, "[s]overeign immunity precludes federal court jurisdiction." *Garling v. United States Envtl. Prot. Agency*, 849

7

F.3d 1289, 1294 (10th Cir. 2017). Indeed, "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The "United States can be sued only to the extent that it has waived its immunity." *Garling*, 849 F.3d at 1294 (quoting *United States v. Orleans*, 425 U.S. 807, 814 (1976)).

The FTCA "is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *Orleans*, 425 U.S. at 814; 28 U.S.C. § 1346(b)(1). However, 28 U.S.C. Section 2680 provides exceptions to this waiver. *Garling*, 849 F.3d at 1294. "When an exception applies, sovereign immunity remains, and federal courts lack jurisdiction." *Id.*

Relevant for resolving the instant Motion, the discretionary function exception set forth in 28 U.S.C. Section 2680(a) provides:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The "discretionary function exception 'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.'" *Garling*, 849 F.3d at 1295 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 808 (1984)).

8

Courts apply a two-step test to determine whether the discretionary function exception applies to a government action. *Berkovitz v. United States*, 486 U.S. 531 (1988). First, a court must determine whether the act was discretionary, that is, whether the act was "a matter of choice" or "judgment" for the acting employee." *Sydnes v. United States*, 523 F.3d 1179, 1183 (10th Cir. 2008) (quotations omitted); *Garling*, 849 F.3d at 1295 (citing *Garcia v. Air Force*, 533 F.3d 1170, 1176 (10th Cir. 2008)). "Conduct is not discretionary if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive." *Garcia*, 533 F.3d at 1176.

If the conduct is discretionary, the court moves to the second step of the *Berkovitz* test and considers whether the conduct required the "exercise of judgment based on considerations of public policy." *Garling*, 849 F.3d at 1295; *Berkovitz*, 486 U.S. at 536–37. This is so because the "basis for the discretionary function exception was Congress' desire to 'prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Berkovitz*, 486 U.S. at 536–37 (quoting *United States v. Vang Airlines*, 467 U.S. 797, 814 (1984)).

"Because the discretionary function exception is jurisdictional, the burden is on [the plaintiff] to prove that it does not apply." *Hardscrabble Ranch, L.L.C. v. United States*, 840 F.3d 1216, 1220 (10th Cir. 2016).

9

### III. ANALYSIS

Whether sovereign immunity bars Plaintiff's claim depends on whether the Defendant's act of scheduling a second opinion examination was within the discretion of the OWCP or was in violation of mandatory procedures imported in the FECA Manual. Thus, to resolve the instant Motion, the Court reviews whether the discretionary function exception applies, and in doing so, agrees with the Magistrate Judge that the Court must conduct the two-step analysis from *Berkovitz*. (Doc. # 27 at 5–6.)

#### A. STEP ONE: WHETHER THE ACT WAS DISCRETIONARY

The first *Berkovitz* step requires the Court to determine whether the challenged conduct was "discretionary," that is whether it was "a matter of judgment or choice for the acting employee." *Garling*, 849 F.3d at 1295 (quoting *Garcia*, 533 F.3d at 1176). If a federal statute, regulation, or policy "prescribes a course of action for an employee to follow," the conduct is not discretionary. *Id.* Magistrate Judge Varholak determined that while the FECA Manual prescribes certain situations in which "a claim examiner should refer a claim to a second opinion specialist[,]" the FECA Manual does not expressly prohibit a claims examiner from seeking a second opinion in any other situation. (Doc. # 27 at 8.) Yet, Plaintiff argues that the FECA Manual constitutes a policy that prohibits second opinion examinations except in six situations. (Doc. # 30 at 1–4.) The Court agrees with the Magistrate Judge.

Six of Plaintiff's ten enumerated objections are rooted in the argument that the FECA Manual establishes only six situations in which a second opinion examination may be required. (*Id.* at 1–11, 15–16.) In support of these objections, Plaintiff asserts

that four portions of the FECA Manual provide "mandatory regulations that the OWCP violated when ordering the second opinion" examination. (Doc. # 27 at 7; Doc. # 18 at 10–13.) The Court agrees with Magistrate Judge Varholak's analysis that none of these portions compel the conclusion that ordering a second opinion examination was not discretionary. (Doc. # 27 at 7–11.) However, the Court need only address FECA Manual's Chapter 3-0500 to resolve this case.

Chapter 3-0500, Paragraph 3 provides:

> **3. <u>Second Opinion Examinations.</u>** The attending physician (AP) is the primary source of medical evidence in most cases, and the AP is expected to provide a rationalized medical opinion based on a complete medical and factual background in order to resolve any pending issues in a case. **In certain circumstances**, such as where the AP's report does not meet the needs of the OWCP, OWCP **may** schedule a second opinion examination (SECOP).
>
> > a. <u>Determining the Need for Examination</u>. The **decision to refer a case for a second opinion examination rests with the CE**, though such an exam may be recommended by a Field Nurse (FN) or District Medical Advisor (DMA), or requested by the employing agency. A **complete discussion** of when a CE **should** refer a second opinion examination is found in PM2-0810-9 and 2-810-10.
> >
> > Also, OWCP may send a case file for second opinion review where actual examination is not needed, or when the employee is deceased.

FECA PM 3-0500(3)(a) (emphases added). Plaintiff argues that the phrase "complete discussion" means "full and finished" and "not lacking in any way," which indicates that the only situations in which a claim examiner can refer a case for a second opinion examination are those demarcated in FECA Manual Chapter 2-0810(9)(b). (Doc. # 30 at 1–3 (citing *Complete*, <u>The Law Dictionary, Feat. Black's Law Dictionary Free Online Dictionary</u> (2d ed.).) Further, Plaintiff argues that Chapter 2-0810(9)(b) read in conjunction with Chapter 3-0500(3) provides that the OWCP "does *not* have discretion

11

over scheduling a [Second Opinion Evaluation] and that the six situations set forth in Chapter 2-0810(9)(b) "are strictly the only situations for which OWCP should schedule a second opinion (SECOP) evaluation[.]" (*Id.* at 2 (emphasis in original).)

The plain language of Chapter 3-0500(3) contradicts Plaintiff's arguments. Chapter 3-0500(3) provides that under "certain circumstances," the OWCP "**may** schedule a second opinion examination[,]" whereas Chapter 3-0500(3)(a) provides that there are other situations "when a CE **should** refer a case for a second opinion examination[.]" FECA PM 3-0500(3), (3)(a) (emphases added). It must follow that Chapter 3-0500(3) dispels the notion that Chapter 3-0500(3)(a) presents the **only** situations in which a claim examiner can schedule a second opinion examination. Indeed, the use of "may" in Chapter 3-0500(3) and "should" in Chapter 3-0500(3)(a) incontrovertibly establishes that the FECA Manual sets forth **two** sets of situations where the claim examiner **may** and **should** arrange for a second opinion examination.

Furthermore, in conjunction with language in Chapter 3-0500(3), Chapter 3-0500(3)(a)'s provision allocates the "decision to refer a case for a second opinion examination" with a claim examiner. This provision too forecloses Plaintiff's assertion that the FECA Manual promulgates mandatory regulations governing when a second opinion examination can be scheduled.

Moreover, that Chapter 3-500(3)(a) contains the phrase "complete discussion" is of no import. Because Chapter 3-0500(3)(a) governs instances in which the claim examiner **should** refer an employee's case for a second opinion examination as opposed to when a claim examiner **may** do so, Chapter 3-0500(3)(a)'s use of "complete

12

discussion" should only apply to when the claim examiner **should** refer a case for a second opinion examination. Thus, even if the Court ascribed the meaning of exclusivity to "complete discussion," based on the structure of Chapter 3, that limitation would only apply to the subject matter of Chapter 3-0500(3)(a)—not Chapter 3-0500(3). As such, the alleged exclusive nature of the six situations set forth in Chapter 2-0810(9)(b) would not apply to the "certain circumstances" where a claim examiner "may schedule a second opinion examination." FECA PM 3-0500(3).

In the instant case, the FECA Manual's plain language reveals that Defendant's ability to schedule a second opinion examination of Plaintiff was a matter of choice or judgment for the OWCP. In other words, Defendant's conduct was discretionary. Thus, if the OWCP exercised its discretion to direct the second opinion evaluation, regardless of whether such exercise was in bad faith, Defendant is immune from liability arising from that conduct. 28 U.S.C. § 2680(a). Accordingly, the first *Berkovitz* step is satisfied.

**B.     STEP TWO: WHETHER THE ACT IMPLICATES A POLICY JUDGMENT**

Because Defendant's conduct is discretionary, the court moves to the second step of the *Berkovitz* test and considers whether the conduct required the "exercise of judgment based on considerations of public policy." *Garling*, 849 F.3d at 1295; *Berkovitz*, 486 U.S. at 536–37. As Magistrate Judge Varholak observed, the Supreme Court expounded upon the second step in *United States v. Gaubert* and explained:

> When established government policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory

13

> regime. The focus of the inquiry is not the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

499 U.S. 315, 324–25 (1991). Construing *Gaubert*, the United States Court of Appeals for the Tenth Circuit determined that courts must ask "if the decision or nondecision implicates the exercise of a policy judgment of a social, economic, or political nature." *Duke v. Dep't of Agric.*, 131 F.3d 1407, 1411 (10th Cir. 1997).

Despite the fact that the burden rests with Plaintiff, he did not address the second *Berkovitz* step because he contends that "it was unnecessary" as the discretionary function exception does not apply. (Doc. # 27 at 11; Doc. # 30 at 16); *Hardscrabble Ranch*, 840 F.3d at 1220. As set forth above, the Court is unconvinced of that position. Setting that failure aside, the Court agrees with Magistrate Judge Varholak's conclusion that Defendant's discretionary conduct was based on considerations of public policy. (Doc. # 27 at 11–12.) Indeed, the Magistrate Judge was correct in articulating that requesting a second opinion examination served the public policies of "regulating FECA claims and preventing criminal fraud against the Government." (Doc. # 27 at 12 (citing *Mumme v. United States*, No. 00-CV-103-B, 2001 WL 80084, at *4 (D. Me. Jan. 29, 2001) (quoting *Ward v. United States*, 738 F. Supp. 129, 133 (D. Del. 1990)).).

In the instant case, when the OWCP exercised discretion to schedule a second opinion examination to investigate whether Plaintiff was still entitled to FECA benefits, such conduct advanced the FECA Manual's purpose of governing the process by which the OWCP determines whether an injured employee is eligible for compensation and ensured that fraud was not perpetrated against the Government. As such, Defendant's

discretionary conduct is grounded in the policy of FECA's regulatory regime. Accordingly, the second *Berkovitz* step is satisfied.

Because both *Berkovitz* steps have been met, the discretionary function exception applies and the FTCA does not waive Defendant's immunity over Plaintiff's claim. Therefore, because sovereign immunity bars Plaintiff's claim, the Court does not have subject matter to adjudicate that claim. Accordingly, the Court adopts the Recommendation and dismisses Plaintiff's Complaint without prejudice.[4]

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Plaintiff's Objection (Doc. # 30) to the Recommendation is OVERRULED;

2. Magistrate Judge Varholak's Recommendation (Doc. # 27) is AFFIRMED and ADOPTED as an Order of this Court;

3. Defendant United States' Motion to Dismiss (Doc. # 10) is GRANTED; and

4. Plaintiff's Complaint (Doc. # 1) is DISMISSED WITHOUT PREJUDICE.

DATED: August 6, 2019

BY THE COURT:

*Christine M Arguello*
CHRISTINE M. ARGUELLO
United States District Judge

---

[4] "[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims." *Brereton v. Bountiful City Corp.*, 434 F.2d 1213, 1218 (10th Cir. 2006) (emphasis in original).