IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 18-cv-02378-CMA-STV

WARREN WEXLER,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

## ORDER DENYING PLAINTIFF'S RULE 59(E) MOTION TO ALTER OR AMEND THE COURT'S JUDGMENT

    This matter is before the Court on Plaintiff Warren Wexler's Rule 59(e) Motion to Alter or Amend the Court's Judgment (Doc. # 52). Plaintiff requests the Court to reconsider its Order Adopting Magistrate Judge Varholak's Recommendation to Grant Defendant United States' Motion to Dismiss (Doc. # 50). On September 23, 2019, Defendant responded. (Doc. # 56.) In addition to filing his Reply to the Response on October 3, 2019 (Doc. # 57), Plaintiff filed several supplements[1] (Doc. ## 53, 54, 55, 58) to the Motion. Having reviewed the underlying briefing, pertinent record, and applicable law, for the following reasons, the Court denies Plaintiff's Motion.

---

[1] The contents of these supplements contain corrections, modifications, or arguments related to the instant Motion (Doc. # 52).

## I. BACKGROUND

The Court's Order Adopting Magistrate Judge Varholak's Recommendation to Grant Defendant's Motion to Dismiss (Doc. # 50) and the Recommendation (Doc. # 27) provide a thorough recitation of the applicable legal standards and factual and procedural background of this dispute and are incorporated herein by reference. Accordingly, the legal standards and facts will be presented only to the extent necessary to address the instant Motion.

### A. APPLICABLE LEGAL STANDARDS

"[S]overeign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1984). As such, "[s]overeign immunity precludes federal court jurisdiction." *Garling v. United States Envtl. Prot. Agency*, 849 F.3d 1289, 1294 (10th Cir. 2017). Indeed, "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The "United States can be sued only to the extent that it has waived its immunity." *Garling*, 849 F.3d at 1294 (quoting *United States v. Orleans*, 425 U.S. 807, 814 (1976)).

The Federal Torts Claim Act "is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *Orleans*, 425 U.S. at 814; 28 U.S.C. § 1346(b)(1). However, 28 U.S.C. § 2680 provides exceptions to this waiver. *Garling*, 849 F.3d at 1294. "When an exception applies, sovereign immunity remains, and federal courts lack jurisdiction." *Id.*

2

Relevant for resolving the instant Motion, the discretionary function exception set forth in 28 U.S.C. § 2680(a) provides:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The "discretionary function exception 'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.'" *Garling*, 849 F.3d at 1295 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 808 (1984)).

Courts apply a two-step test to determine whether the discretionary function exception applies to a government action. *Berkovitz v. United States*, 486 U.S. 531 (1988). First, a court must determine whether the act was discretionary, that is, whether the act was "a matter of choice" or "judgment" for the acting employee." *Sydnes v. United States*, 523 F.3d 1179, 1183 (10th Cir. 2008) (quotations omitted); *Garling*, 849 F.3d at 1295 (citing *Garcia v. Air Force*, 533 F.3d 1170, 1176 (10th Cir. 2008)). "Conduct is not discretionary if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive." *Garcia*, 533 F.3d at 1176. If the conduct is discretionary, the court moves to the second step of the *Berkovitz* test and considers

whether the conduct required the "exercise of judgment based on considerations of public policy." *Garling*, 849 F.3d at 1295; *Berkovitz*, 486 U.S. at 536–37.

The Federal Employees' Compensation Act ("FECA") "defines the United States' exclusive liability for claims by federal employees for work-related injuries." *Wideman v. Watson*, 617 F. App'x 891, 894 (10th Cir. 2015) (citing 5 U.S.C. §§ 8102(a), 8116(c)); *Farley v. United States*, 162 F.3d 613, 615 (10th Cir. 1998)). It provides that "the United States will pay compensation for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty . . . ." 5 U.S.C. § 8102(a); 20 C.F.R. § 10.1. The Secretary of Labor may also prescribe rules and regulations necessary for the administration and enforcement of the Act. 5 U.S.C. § 8149. The authority provided by 5 U.S.C. §§ 8145 and 8149 has been delegated by the Secretary to the Director of the Office of Worker's Compensation ("OWCP"). 20 C.F.R. § 10.2. The OWCP's discretion in determining how to administer FECA has been described as "virtually limitless." *See Markham v. United States*, 434 F.3d 1185, 1188 (9th Cir. 2006).

A subdivision of OWCP, the Division of Federal Employees' Compensation, drafted the FECA Procedure Manual ("FECA Manual") to "govern[] claims under [] FECA and address[] its relationship to the program's other written directives." FECA PM 0-100(3), 0-0200(1). The FECA Manual "establishes policies, guidelines and procedures for determining whether an injured employee is eligible for compensation." *Woodruff v. U.S. Dep't of Labor*, 954 F.2d 634, 641 (11th Cir. 1992). Pertinent to the instant action, the FECA Manual also governs the parameters for when a FECA claims examiner may

4

direct or schedule a second opinion examination of an injured employee. FECA PM 3-0500, 2-0810(9). Specifically, Chapter 3-0500, Paragraph 3 provides:

> **3. Second Opinion Examinations.** The attending physician (AP) is the primary source of medical evidence in most cases, and the AP is expected to provide a rationalized medical opinion based on a complete medical and factual background in order to resolve any pending issues in a case. **In certain circumstances**, such as where the AP's report does not meet the needs of the OWCP, OWCP **may** schedule a second opinion examination (SECOP).
>
> > a. <u>Determining the Need for Examination</u>. The **decision to refer a case for a second opinion examination rests with the CE**, though such an exam may be recommended by a Field Nurse (FN) or District Medical Advisor (DMA), or requested by the employing agency. A **complete discussion** of when a CE **should** refer a second opinion examination is found in PM 2-0810-9 and 2-810-10.
> >
> > Also, OWCP may send a case file for second opinion review where actual examination is not needed, or when the employee is deceased.

FECA PM 3-0500(3)(a) (emphases added).

Chapter 2-0810-9(b) provides that the claims examiner "**should** refer a claim to a second opinion specialist in the following circumstances:"

> (1) <u>The CE has gathered</u> all the medical information and evidence from the AP and does not have enough evidence about a diagnosis or an adequately reasoned opinion about causal relationship to accept the case, but does have sufficient evidence to suggest that the claimant might be entitled to benefits.
>
> (2) <u>The AP's examinations and reports</u> in occupational disease cases do not provide the specific evidence that the OWCP requires for adjudication. The primary examples include hearing loss and asbestosis claims requiring examination in compliance with the specifications outlined in FECA PM 3-0600, or an emotional injury case where a compensable factor of employment is identified.
>
> (3) <u>Temporary total disability (TTD)</u> has gone on longer than usual in a case, and the AP is not an appropriate specialist or has not

5

satisfactorily explained the reason for the continued disability or why the disability is causally related to the original work injury.

(4) <u>The CE has reason to believe that a claimant is no longer disabled</u> due to the accepted work injury, or no longer has objective residuals of the accepted injury, but the AP maintains that the claimant has residuals or disability from the work injury and does not submit sufficient medical rationale to support that opinion.

(5) <u>The AP cannot or will not send an acceptable</u> permanent impairment evaluation based on the AMA <u>Guides</u>. If the AP has submitted an examination report which outlines medical findings and calculates a percentage of impairment based on the appropriate version of the AMA <u>Guides</u>, the CE should submit the AP's report to the DMA for the schedule award calculation and forego referring the claimant to a second opinion specialist for the same purpose.

(6) <u>Following a consult or a referral with the DMA</u>, the DMA indicates that the file does not contain sufficient medical evidence to make a decision on the medical issue or provide a rating of impairment. In such cases, the DMA may recommend referring the case to a second opinion specialist.

FECA PM 2-0810-9(b)(1)–(6) (emphasis added).

B.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff applied for FECA benefits in 1991, and upon the Office of Worker's Compensation's ("OWCP") approval of his application, OWCP began paying Plaintiff's wage-loss benefits for this total disability. (Doc. # 10 at 4.) In July 2015, pursuant to 5 U.S.C. § 8123(a), the Denver District Office ("DDO") of the OWCP sent Plaintiff a letter providing that a second opinion examination of him was scheduled for August 17, 2015. (Doc. # 1-2 at 1; Doc. # 10-1 at 3, ¶ 16.) Although Plaintiff objected in writing to the

second opinion examination request, Plaintiff attended the examination on August 17, 2015. (Doc. # 10 at 5; Doc. # 1-2 at 21.)

On September 17, 2018, Plaintiff filed suit against Defendant and asserted an intentional infliction of emotional distress claim arising out of the OWCP's decision to schedule Plaintiff for a second opinion examination. (Doc. # 1, Doc. # 1-2 at 12–15; 21–22.) Defendant moved to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6) (Doc. # 10.) With respect to subject matter jurisdiction, Defendant argued that it was immune to Plaintiff's suit because the OWCP's decision to schedule Plaintiff for a second opinion examination was a "discretionary act," and as such, Defendant's conduct fit within an exception to the FTCA, which waives sovereign immunity over certain tort claims. (*Id.* at 7–10.) The Court referred Defendant's Motion to Dismiss to Magistrate Judge Varholak. (Doc. # 13.)

On April 24, 2019, Magistrate Judge Varholak issued his Recommendation that the Court should dismiss Plaintiff's Complaint for lack of subject matter jurisdiction. (Doc. # 27.) On May 24, 2019, Plaintiff objected to the Recommendation and argued that the discretionary function exception did not apply because, when Defendant ordered the second opinion examination, it violated mandatory regulations set forth in the FECA Manual, which purportedly provides only six situations for when a second opinion examination should be referred. (Doc. # 30 at 1–8, 10, 15–17.) After briefing

was complete, on August 6, 2019, the Court issued its Order overruling Plaintiff's objections and adopting the Recommendation. (Doc. # 50.)

Reviewing the Recommendation under a *de novo* standard, the Court agreed with Magistrate Judge Varholak that the OWCP's act of scheduling Plaintiff for a second opinion examination was discretionary pursuant to the FECA Manual. (*Id.* at 10–13.) Applying the Supreme Court's two-step test, the Court determined that (1) Defendant's act was "truly discretionary" because the plain language of the FECA Manual permits the OWCP with discretion to order a second opinion examination (*id.* at 10–13); and (2) Defendant's exercise of discretion in ordering a second opinion examination served the public policy of "regulating FECA claims and preventing criminal fraud against the Government." (*Id.* at 13–15); *Berkovitz v. United States*, 486 U.S. 531 (1988). Because the discretionary function exception applied, the Court concluded that the FTCA did not waive Defendant's immunity over Plaintiff's claim, and as a result, sovereign immunity barred Plaintiff's claim. (*Id.* at 15.) Therefore, the Court dismissed Plaintiff's Complaint without prejudice and entered judgment in favor of Defendant. (*Id.*; Doc. # 51.)

On September 3, 2019, Plaintiff filed the instant Motion (Doc. # 52) and contends that the Court erred in holding that when a second opinion examination may be ordered is not limited to the enumerated list of situations contained in the FECA Manual, Chapter 2-0810(9)(b). (*Id.* at 3–4.) Furthermore, Plaintiff asserts that if the Court refuses to reconsider its judgment, manifest injustice would result. (Doc. # 57 at 2.) Defendant filed its Response and argues that reconsideration is improper because Plaintiff's Motion sets forth arguments that Plaintiff has already made in his objections to the

8

Recommendation and that the Court has already addressed these issues in its Order adopting the Recommendation. (Doc. # 56 at 3.) For the following reasons, Plaintiff's arguments are insufficient to necessitate reconsideration, and as such, Plaintiff's Motion for Reconsideration is denied.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure do not explicitly authorize a motion for reconsideration for final judgments or interlocutory orders. *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991); *Mantooth v. Bavaria Inn Rest., Inc.*, 360 F. Supp. 3d 1164, 1169 (D. Colo. 2019). However, regarding a final judgment, the Rules allow a litigant who was subject to an adverse judgment to file a motion to change the judgment pursuant to Rule 59(e) or a motion seeking relief from the judgment pursuant to Rule 60(b). *Van Skiver*, 952 F.2d at 1243.

There are three major grounds justifying reconsideration of an order under Rule 59(e): "(1) an intervening change in the controlling law, (2) new evidence [that was] previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Moreover, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law, but such motions are "inappropriate vehicles to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." *Id.* at 1012 (citing *Van Skiver*, 952 F.2d at 1243).

To that end, "[a]bsent extraordinary circumstances . . . the basis for the second motion must not have been available at the time the first motion was filed." *Servants of the Paraclete*, 204 F.3d at 1012. A motion for reconsideration is not appropriate to revisit issues already addressed. *Van Skiver*, 952 F.2d at 1243. "Rather, as a practical matter, to succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Mantooth*, 360 F. Supp. 3d at 1169 (citing *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000)) (internal quotations omitted). "Even under this lower standard, '[a] motion to reconsider should be denied unless it clearly demonstrates manifest error of law or fact or presents newly discovered evidence." *Id.* (citing *Sanchez v. Hartley*, No. 13-cv-1945-WJM-CBS, 2014 WL 4852251, at *2 (D. Colo. Sept. 30, 2014)).

### III.     ANALYSIS

Plaintiff's Motion is aimed at the third justification for warranting reconsideration—that the Court must correct clear error or prevent manifest injustice. (Doc. ## 52 at 4; 57 at 2.) The Court notes that Plaintiff tethers his argument that failure to reconsider would result in manifest injustice to his contention that there are alleged "clear errors" underlying the analysis of the Court's Order. (Doc. # 57 at 2–9.) As such, the Court addresses only whether Plaintiff has demonstrated that the Court committed any clear errors in its analysis. For the following reasons, Plaintiff failed to demonstrate that reconsideration is warranted.

As a preliminary matter, Plaintiff's Motion for Reconsideration is improper

because it is simply a rehash of arguments that Plaintiff previously asserted in his Response in Opposition to Defendant's Motion to Dismiss (Doc. # 18) and his Objection to the Recommendation (Doc. # 30). In his Motion, he argues that it is "self-evident" that the Court erred in not determining that there are only seven[2] circumstances in which a claims examiner should schedule a second opinion examination and that such scheduling is mandatory. (Doc. # 52 at 1–4.) In support of this argument, he avers that the Court quoted the FECA Manual but omitted certain language in a "misleading" way, and that such omissions mischaracterized the true, non-discretionary nature of ordering a second opinion examination. (*Id.* at 3–4.) Plaintiff asserts that, in the Court's prior analysis, it omitted the emphasized language in the phrase"[i]n certain circumstances, **such as where the AP's report does not meet the needs of the OWCP**, OWCP may schedule a second opinion examination." (Doc. # 52 at 3–4 (citing FECA PM 3-0500(3)) (emphasis added).) He contends that when an OWCP may schedule a second opinion examination is still limited only to the seven situations described in Chapter 2-0810-9(b) because the omitted language purportedly references some of the situations set forth in Chapter 2-0810-9(b). (Doc. # 52 at 4.)

Plaintiff's contentions are old, previously rejected arguments with a new gloss. The basis of his Motion for Reconsideration is predicated solely upon the fact that Chapter 3-0500(2)(a) contains the phrase "[a] complete discussion of when a [claims

---

[2] The Court notes that Plaintiff mentioned "seven situations" because he contends that the third of six enumerated situations in which a claims examiner "should" refer a second opinion examination provides two circumstances warranting a second opinion examination. (Doc. # 52 at 4 (citing FECA PM 2-0810-9(b)(1)–(6).)

11

examiner] should refer a case for a second opinion examination is found in PM 2-0810-9 . . . ." ("complete discussion" phrase). (*Id.* at 3–5.) Yet, Plaintiff's interpretation of the "complete discussion" phrase guided his response to Defendant's Motion to Dismiss (Doc. # 18 at 10–15) and his Objection to the Recommendation (Doc. # 30 at 1–4). The Court has already rejected Plaintiff's interpretation, which provides that the use of "complete discussion" to describe the situations in which a claims examiner should refer a second opinion examination forecloses any other "circumstance . . . "for which OWCP may [is permitted to] schedule a second opinion examination (SECOP)." (Doc. # 50 at 11–12 (quoting Doc. # 30 at 2) (alterations in original).)

Indeed, in the Court's Order adopting the Recommendation, it interpreted the FECA Manual to provide situations in which a claims examiner **may** and **should** refer a second opinion examination. (*Id.* at 11–13.) The use of "may" in the FECA Manual evinces a choice to permit a claims examiner with discretion to order a second opinion examination outside of the confines of when a second opinion examination **must** be ordered. (*Id.* at 12.) Given these two distinct situations, the Court observed that the "complete discussion" phrase was only a reference to situations when the claims examiner **should** refer a case for a second opinion examination as opposed to when a claims examiner **may** schedule a second opinion examination. (*Id.* at 12–13.) Although Plaintiff provides more detail about why the Court should adopt Plaintiff's interpretation of the "complete discussion" phrase, those additional details arise from neither new information nor law that was previously unavailable to Plaintiff at the Motion to Dismiss and Objection stages of this litigation. *Servants of Paraclete*, 204 F.3d at 1012.

Accordingly, Plaintiff's Motion is an improper rehash of previously rejected arguments, and as such, reconsideration is unwarranted.

Furthermore, the new gloss to Plaintiff's argument does not convince this Court that it erred in its decision. Plaintiff's contention that the "omitted phrase" in Chapter 3-0500(3) is a reference to situations set forth only in Chapter 2-0810-9(b) demonstrates that he fails to consider that the meanings of "may" and "should" are not synonymous. Failure to recognize this distinction is fatal to Plaintiff's argument because any situation in which a claims examiner "may" order a second opinion examination, "such as where the AP's report does not meet the needs of the OWCP," cannot be a reference only to those situations listed in Chapter 2-0810-9(b), where a claims examiner "should" refer a second opinion examination. Plaintiff's proffered interpretation (Doc. # 52 at 3–4) would render Chapter 3-0500(3) and the first sentence of Chapter 3-0500(3)(a) meaningless. Accordingly, the Court is unpersuaded that it erred.

Because Plaintiff failed to demonstrate that the Court erred in its decision, manifest injustice will not result. In the absence of any evidence of extraordinary circumstances warranting reconsideration, the Court declines to revisit issues that it has already thoughtfully considered and decided. Accordingly, Plaintiff's Motion for Reconsideration is denied.

## IV. CONCLUSION

Based on the foregoing reasons, the Court ORDERS that Plaintiff's Motion to Reconsider (Doc. # 52) is DENIED.

DATED: November 4, 2019.

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge